```
          IN THE UNITED STATES DISTRICT COURT
            DISTRICT COURT OF NEW JERSEY


THOMAS PARK,                   :   HONORABLE JOSEPH E. IRENAS
                               :
        Petitioner,            :   CIVIL ACTION. NO. 08-1092(JEI)
                               :
    v.                         :
                               :          OPINION
UNITED STATES OF AMERICA,      :
                               :
        Respondent.            :
```

**APPEARANCES:**

JEROME M. BROWN, Attorney at Law
1628 J.F.K Blvd., Suite 1000
8 Penn Center
Philadelphia, Pa 19103
     Counsel for Petitioner

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Allen Harberg, Assistant United States Attorney
Federal Building and U.S. Courthouse
401 Market Street, 4th Floor
Camden, NJ 08101
     Counsel for Respondent

**IRENAS**, Senior District Judge:

Before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (2008) (hereinafter "§ 2255").  For the reasons set forth below, Petitioner's application will be dismissed in part for lack of jurisdiction and denied in part without an evidentiary hearing.

**I.**

On February 15, 2006, Thomas Park was arrested and charged with committing mail fraud, in violation of 18 U.S.C. § 1341. Park and the Government reached a plea agreement that was signed by Park and his attorney, Jeffrey Zucker. Park admitted in the plea agreement that he obtained money by false or fraudulent pretenses by overbilling his customers for services and postage in connection with his bulk mailing business, TC Direct. (Gov't Ex. 2, Plea Agreement, 1.) Park stipulated that the loss amount due to the overbilling was more than $400,000 and less than $1,000,000, resulting in a stipulated Base Offense Level of 21 pursuant to U.S.S.G § 2B.1 (2005). *Id.* at 6. Because the offense was committed through mass marketing, Park stipulated to an increase of two offense levels pursuant to U.S.S.G § 2B1.1(b)(2)(A)(i).[1] *Id.* The plea further stipulated to a downward departure of two levels, later changed to three levels, due to Petitioner's acceptance of responsibility. *Id.* By signing the plea, Petitioner also agreed to waive his right to appeal or collaterally attack his sentence, including a motion under § 2255, if the sentence fell within the stipulated range. *Id.* at 7.

---

[1] Although the plea agreement states that this increase in two levels pursuant to U.S.S.G. § 2B.1.1(b)(2)(A)(I) applied because the offense involved 10 or more victims, it actually applied because the offense involved mass marketing. Only six victims were involved.

2

This Court accepted Petitioner's guilty plea during a hearing, held pursuant to Fed. R. Crim. P. 11, on June 6, 2006 (hereafter the "Plea Hearing"). The Court concluded that Petitioner understood the significance of the plea agreement and was satisfied by his counsel's representation. The Court spent considerable time questioning Petitioner regarding the voluntariness of his plea, his understanding of the plea agreement's terms, and Petitioner's satisfaction with his representation by his attorney before concluding that Petitioner's decision to plead guilty was voluntary and knowing. (Gov't Ex. 3, Plea Hearing Tr. at 7:4-28:20.)

On February 21, 2007, Petitioner was sentenced to a prison term of a year and a day to be followed by a three-year term of supervised release. In addition, Petitioner was ordered to make restitution in the amount of $547,419 to the victims specified in the probation report. (Gov't Ex. 5, Sentencing Tr. 24:10-14; 25:22-26:11.)

Petitioner filed this § 2255 Motion on February 29, 2008.

## II.

§ 2255 provides, in pertinent part, that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in

3

> excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see also* Rules Governing § 2255 Cases, Rule 1(a). Thus, Petitioner is entitled to relief only if he can establish that he his in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas motion under § 2255. *See Gov't of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must first determine whether the Petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3d Cir. 1991). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files and records, 'show conclusively that the movant is not entitled to relief.'" *U.S. v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *U.S. v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)); *Forte*, 865 F.2d at 62.

### III.

In the instant Motion, Petitioner challenges only his

4

supervised release and the amount of restitution imposed.[2] Petitioner claims that he is entitled to be resentenced because his lawyer failed to provide sufficient mitigating evidence at sentencing and failed to ensure the accuracy of other information, in violation of Petitioner's Sixth Amendment rights.

**A.**

The main thrust of the instant Motion appears to be Petitioner's contention that the amount of restitution owed was erroneously calculated and that Petitioner's counsel was ineffective for stipulating to the loss amount used to calculate restitution. However, the Court does not have jurisdiction to modify the amount of restitution imposed at sentencing.[3] The Third Circuit has explained, "§ 2255's language clearly and unambiguously limits its applicability to defendants seeking release from custody. It is not available to those . . . who challenge only fines or restitution orders." *United States v.*

---

[2] Petitioner has already served the entire term of imprisonment imposed by this Court.

[3] The Government's brief did not challenge the Court's jurisdiction, but this Court may *sua sponte* decide the issue. *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994) (considering the "in custody" jurisdictional issue on appeal even though the Government failed to raise the argument in the district court); *United States v. Higgs*, 504 F.3d 456, 457 (3d. Cir. 2007) (noting that a Court has an obligation to inquire *sua sponte* into its own jurisdiction).

*Walker*, 149 Fed. Appx. 55, 57 (3d Cir. 2005) (citing *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) (noting that the First, Fifth, Sixth, Seventh, and Eleventh Circuits have held that modification of an amount of restitution is not available under a § 2255 motion because the defendant is not "in custody" as the statute requires));[4] *cf. Obado v. New Jersey*, 328 F.3d 716 (3d Cir. 2003)(holding that restitutionary payments made by petitioner after he completed his state prison sentence did not satisfy "custody" requirement of 28 U.S.C. § 2254).

While Petitioner's challenge to the period of supervised release is cognizable under § 2255,[5] his restitution claim may not ride the coattails of the challenge to the period of supervised release. *Kaminski v. United States*, 339 F.3d 84, 87-89 (2d Cir. 2003) *cert. denied*, 540 U.S. 1084 (2003) (holding

---

[4] *See Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998)*; Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Smullen v. United States*, 94 F.3d 20, 25-26 (1st Cir. 1996); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995); *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994). *But see Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (allowing a Section 2255 claim challenging restitution if there is a meritorious claim of ineffective counsel).

[5] Although Petitioner is not physically incarcerated, supervised release subjects Petitioner to "restraints not shared by the public generally," and so relief is available under § 2255. *Jones v. Cunningham*, 371 U.S. 236, 240 (1963); *see also United States v. Essig*, 10 F.3d 968, 970 n.3 (3d Cir. 1993) (asserting that the Court had jurisdiction over the § 2255 motion even though the petitioner had completed his prison term because the petitioner was still subject to three years of supervised release).

that challenges to noncustodial punishments are not cognizable in a § 2255 petition even when joined with challenges to custody); *Smullen*, 94 F.3d at 26 (same).  Accordingly, this Court cannot address the merits of Petitioner's arguments with respect to restitution.[6]  Insofar as the instant Motion challenges the restitution portion of Petitioner's sentence, it will be dismissed for lack of jurisdiction.[7]

---

[6] If there was indeed an error in the restitution calculation, Petitioner's remedy might be a writ of *coram nobis*. *See* All Writs Act, 28 U.S.C. § 1651, *see also Kaminski*, 339 F.3d at 90 (noting the possible availability of a writ of *coram nobis* to remedy alleged errors in restitution orders); *see also Obado,* 328 F.3d at 718 ("The unavailability of habeas relief does not leave deserving petitioners entirely without recourse because they may be able to bring claims via a writ of error *coram nobis*.").  However, the Court notes that in the Plea Agreement, Petitioner waived his right to appeal, collaterally attack, or file any other writ or motion to challenge the sentence imposed by the sentencing court. (Gov't Ex. 4 at 7)  Given the Court's disposition of the issues presently before it, the validity of that waiver need not be decided at this time.

[7] The Court notes that Petitioner has presented evidence that may show that some of the enumerated victims are not owed restitution. If, for whatever reason, some of the recipients of Petitioner's restitution payments believe they are not owed restitution, they should notify the United States Attorney's Office, the Clerk of the Court, or the Probation Department that the debt is no longer owed and should stop accepting restitution payments. Also, the Court observes that the affidavit of Dennis Demaria, President of Excel Graphics, and the letter from Dawn Dennery, Vice President of Excel Graphics, are written on behalf of two of the victims.  Petitioner will likely need statements directly from Myron Manufacturing and Register.com, the listed victims, because Excel Graphics was not included in the judgment.

7

**B.**

With respect to supervised release, the Court concludes that Petitioner's representation was not constitutionally deficient, and so Petitioner's claims must fail.

In order to successfully assert a claim of ineffective counsel, Petitioner must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). He must demonstrate that "(1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *United States v. Nino*, 878 F.2d 101, 103 (3d Cir. 1989 (citing *Strickland*, 466 U.S. at 687-96). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Petitioner claims that his attorney, Jeffrey Zucker failed to submit sufficient mitigation evidence on Petitioner's behalf at the sentencing hearing.[8] As a result of these alleged failures, Petitioner asserts that he was prejudiced at the sentencing hearing, apparently reasoning that but for counsel's

---

[8] Petitioner asserts that Mr. Zucker should have called character witnesses, submitted character letters, better informed the court of Petitioner's background and character, and ensured that the final loss amount of loss for restitution was accurate. (Pet. Brief, 2.)

8

failures, the Court would have imposed a two-year period of supervised release instead of three years.

There is no reasonable probability that Petitioner's sentence would have been different. The Court had discretion to take additional mitigating evidence and the alleged lower loss amount into account in determining the period of supervised release. Supervised release is primarily determined by an objective standard: the maximum sentence available for the crime committed. 18 U.S.C. § 3559(a)(3). In this case, however, the Court did have some limited discretion, because the Court could have sentenced Petitioner to a minimum of two years or a maximum of three years of supervised release. 18 U.S.C. Appx. § 5D1.2(a)(2). The Court could have considered additional mitigating evidence in deciding between the minimum and maximum period of supervised release.

Nevertheless, it is unlikely that the result would have been any different had any additional evidence been presented. Petitioner asserts that Mr. Zucker should have called character witnesses, submitted character letters, better informed the court of Petitioner's background and character, and ensured that the final loss amount of loss for restitution was accurate. (Pet. Brief, 2.) Petitioner feels that his volunteer efforts, which earned him the New Jersey Red Cross Man of the Year award in 2002, were particularly important. *Id.* However, the mitigating

9

evidence would only have bolstered Petitioner's contention that he is a man of good character. But the Court already recognized positive aspects of Petitioner's character, and the Court further agreed that there was no need for "specific deterrence" in this case.[9] (Gov't Ex. 5, 22:21-23:1.) The additional evidence would not have any impact on the Court's conclusion that violation of §1341 was a serious crime and required general deterrence.[10] *Id.* at 20:10-13. There is no reasonable probability that Petitioner's term of supervised release would have been reduced from three years to two years based on additional mitigating evidence. Accordingly, Petitioner suffered no prejudice from the alleged error of counsel.

Additionally, Petitioner's representation was not constitutionally deficient. Petitioner claims that Mr. Zucker failed to (1) provide additional mitigating evidence on Petitioner's behalf; and (2) investigate and challenge the final loss amount determined by the Court. (Pet. Brief, 2.) "Counsel

---

[9] THE COURT: "Because I think that of all the factors that we talk about, you know, his – his character; well, he has good things about his character. I agree with Mr. Zucker, that we don't need specific deterrence. I don't think this man is going to be back before the Court again, or any court for that matter." (Gov't Ex. 5, 22:21-23:1.)

[10] THE COURT: "[I]t's a serious crime. A lot of money, and it's a serious crime. And the only place that I disagree with what Mr. Zucker said, I think general deterrence is important." (Gov't Ex. 5, 20:10-13.)

has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  Assuming *arguendo* that Mr Zucker did not fully investigate the available mitigating evidence or loss amount, Petitioner must show that it was unreasonable for Mr. Zucker to rely on the information that he had.

Neither Mr. Zucker's use of mitigating evidence nor his investigation of the final loss amount were unreasonable.  First, Mr. Zucker's use of mitigating evidence during the sentencing hearing was not unreasonable.  Petitioner claims that Mr. Zucker did not ask him for any "positive" evidence about himself that could have been used at sentencing.  Petitioner's assertion is contradicted by the record, however, because Mr. Zucker presented Petitioner's personal health information and detailed Petitioner's family responsibilities at the sentencing hearing, and such information could have only come from the Petitioner.

There is no basis for finding Mr. Zucker's strategic decisions regarding mitigating evidence unreasonable.  During the sentencing hearing, Mr. Zucker offered extensive evidence on Petitioner's health, his family responsibilities, his cooperation with the Government investigation, and asserted that Petitioner

11

was a good person who had "truly has learned his lesson."[11] (Gov't Ex. 5, 8:1-4, 9:13-17.)  The evidence of Petitioner's volunteer activity after September 11th largely took place prior to and during the time when Petitioner was committing mail fraud.  It was therefore reasonable for Mr. Zucker to not include that evidence.  *See United States v. Hankerson*, 496 F.3d 303, 311-12 (3d Cir. 2007) (finding it reasonable that counsel did not present evidence of defendant's reforms that took place before the offense of conviction).  It was also reasonable for Mr. Zucker to conclude that additional character evidence was not likely to have changed the period of supervised release to which Petitioner was sentenced.[12]

Mr. Zucker also negotiated a very favorable plea agreement.[13]  Petitioner received a sentence that not only

---

[11] MR. ZUCKER: "You have before you a 50 year old individual, who is obviously in ill health.  He's had problems for a number of years.  He has three children, two at home, ages eight and 11.  His wife is in court with him this morning, Cora Park, and he helps care for his . . . mother-in-law."  (Gov't Ex. 5, 7:7-13.)

[12] THE COURT: "I don't think I've had a single white collar defendant before me who hasn't basically had the same story. Remember, I've had doctors, I've had clergymen, I've had all kinds of people, and its been devastating to their family . . . ."  (Gov't Ex. 5, 19:9-15.)  Despite the evidence of Petitioner's health, family responsibility, and cooperation, the Court still decided that "punishment [was] required."  *Id.* at 21:16.

[13] Petitioner was not charged with the other counts of mail fraud that were pending. (Gov't Ex. 2, 1.)  Petitioner was provided a departure of five levels, bringing the range for imprisonment from 30-37 months to 15-21 months.  *Id.* at 6; *see* 18

incorporated the departures suggested by the Government, but also an additional one point reduction by the Court.[14]  Mr. Zucker did advocate for, and was successful in obtaining, a significantly reduced sentence.

Finally, Petitioner claims that his counsel was ineffective because Mr. Zucker failed to conduct an investigation and present the Court with evidence of the actual amount of loss for restitution.  (Pet. Mot. at 2).  Petitioner's argument is undermined by the record.  Mr Zucker notified the Probation Department in September of 2006 that Petitioner objected to the loss amount for restitution. Letter from Jeffrey Zucker, *supra* note 9.  Petitioner and Mr. Zucker were successful in reducing the amount of restitution from $1.4 million to $547,419.  (Pet. Ex. H, 2.)  Petitioner had eight months to review and investigate the restitution amount.  Petitioner never indicated to the Court that he was dissatisfied with his representation.  The evidence shows that Mr. Zucker did investigate the loss amount, and his strategic decision to accept the amount in the Presentence Report was reasonable.

---

U.S.C. § 5A.

[14]  The Government submitted a 5K1.1 motion on Petitioner's behalf requesting that the Court depart five levels from the base level offence of 19.  After Mr. Zucker's presentation on behalf of the Petitioner, the Court departed six levels to a level 13, one level more than the Government recommended.  (Gov't Ex. 5, 21:25-22:4.)  The departure reduced the sentencing range to 12-18 months.  *Id.*

13

Petitioner was not prejudiced by the alleged errors of Mr. Zucker at sentencing and Mr. Zucker's representation of Petitioner was constitutionally reasonable. Petitioner has provided no evidence that the alleged failures of Mr. Zucker would have altered the period of supervised release in the sentence.  As a result, with respect to supervised release, Petitioner's claim of ineffective counsel fails and this § 2255 Motion must be denied without an evidentiary hearing.

**IV.**

For the reasons set forth above, with respect to supervised release, this Court will deny Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 without an evidentiary hearing.  With respect to restitution, the Court will dismiss Petitioner's Motion for lack of jurisdiction.  Because the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c).  The Court will issue an appropriate order.

Date: July 3, 2008

             s/ Joseph E. Irenas
             **JOSEPH E. IRENAS, S.U.S.D.J.**